HENRY BECKWITH AND OTHERS, COMMISSIONERS OF HIGH-
WAYS OF THE TOWN OF BRIGHTON, PLAINTIFFS, v. HARVEY
WHALEN, AS SOLE COMMISSIONER OF HIGHWAYS OF THE TOWN
OF PENFIELD, DEFENDANT.

*Bridge — over boundary line of towns — action by one town to recover one-half the
expense of its construction — Abandonment of highway in one town — Presump-
tion — arising from neglect to repair for six years.*

This action was brought in behalf of the town of Brighton, to recover from the
town of Penfield one-half of the expense of building a bridge over a creek,
forming the boundary line between the two towns. Upon the trial it appeared
that a road had been laid out in the town of Penfield leading to the bridge,
and a portion thereof had been opened and worked, but that for a distance of
about 200 feet east of the creek it ran through a marsh which was overflowed to
the depth of several feet during high water, and that it could only be used in very
dry weather.

This portion of the road had never been worked. *Held,* that as the portion
of the road which ran through the marsh required to be worked, in order
to render it possible to travel thereon, and as no labor had been expended
thereon for more than six years after the road was laid out, that the highway
must be deemed to have been discontinued or abandoned, and that the
town was not liable to contribute to the expense of building a bridge to connect
therewith.

EXCEPTIONS ordered to be heard in the first instance at the Gen-
eral Term, after a nonsuit at the Monroe county Circuit.

*J. C. Cochrane,* for the plaintiffs.

*J. H. Martindale,* for the defendant.

MULLIN, P. J. :

The plaintiffs brought this action as commissioners of highways
of the town of Brighton, in the county of Monroe, to recover of
the defendant, as commissioner of highways in the town of Pen-
field, in the same county, one-half of the expense of building a
bridge across Irondequoit creek, that separated the two towns.

The commissioner of Penfield refused to unite in erecting the
bridge across said stream, or to contribute to the expense, or recog-

nize any liability of his town to aid in the construction of a bridge across said stream.

The plaintiffs had taken all the steps required to be taken by chapter 225 of the Laws of 1841, as amended by chapter 383 of the Laws of 1857, in order to compel the town of Penfield to pay its proportion of the cost of erecting the bridge, if it was legally liable to contribute to pay the expense thereof.

In 1858 a highway was duly laid out by the commissioners of the town of Penfield, from a highway in said town known as the "Old Dugway road," to the center of Irondequoit creek. Part of the road was opened and worked; but for a distance of some 200 feet easterly from the creek the road as laid out, ran over a marsh which is overflowed to the depth of several feet in high water, so that it could not be traveled over by teams, except in the dryest weather; and it seems to be doubtful whether a team ever did pass over it. No work was ever done upon this marsh.

In 1858 a road was laid out in the town of Brighton extending from "Corwin's," so called, to the center of said creek, at the terminus of above mentioned road in Penfield. This road ran for a part of the distance over a marsh. The commissioners of highways, at the time of building the bridge in question, or soon after, constructed trestle work from the Brighton end of the bridge westerly, to the high land over which the road was laid out, thereby enabling teams to pass over the marshy ground, and afforded a passage for the waters of the creek to pass through in high water.

When the commissioners of Brighton built the bridge across the creek they did nothing to make a road across the marsh on the Penfield side of the creek, but left it as they found it and as it had been for many years.

At the close of the evidence the defendant's counsel moved for a nonsuit, on the following grounds, among others, to wit:

First, that the testimony does not show a highway has been actually opened and worked and traveled upon the route surveyed; and second, there is no evidence of a completed bridge.

It was proved that the new road had been opened and worked from the old dugway road, the place of the commencement of the road in question, to the eastern margin of the marsh in Penfield.

The Commission of Appeals reversed a former judgment of this

court, affirming a judgment at Circuit nonsuiting the plaintiff, the judge at the Circuit holding that no action could be brought by one town against another to recover a part of the expense of building a bridge between such towns, until application had been made to a Special Term or to a justice of the Supreme Court, pursuant to the provisions of chapter 639 of the Laws of 1857.

The General Term did not agree with the judge at the Circuit as to the necessity of an application to a justice of the Supreme Court or to a Special Term, but affirmed the judgment on the ground that the road had not been opened and worked throughout its length, within six years from the time it was laid out.*

The Commission of Appeals held that it was not incumbent on the town, suing to recover one-half of the expense of building a bridge, to prove that the highway had been worked throughout its whole length, because it was probable that the land over which a part of it was laid might be in such a condition, as not to require labor to be laid out on it to make it suitable for travel.

The plaintiffs on the former trial were nonsuited on the opening of their counsel, and we may therefore assume that the case, as it was presented to the Commission of Appeals, did not show that the road was laid over a marsh on which no work had ever been done, nor that it was in a condition to be traveled over by teams unless, perhaps, in the driest part of the summer.

The commissioner who delivered the opinion of the Commission of Appeals holds, that when the plaintiff brings an action to recover part of the expense of building a bridge upon a highway legally laid out, it is incumbent on the defendant to prove that it was not opened and worked within six years from the time it was laid out.

He says: " The mere fact that a portion of the highway was not worked within six years, does not prove that it was abandoned or ceased to be traveled as a highway. It may well be that such a portion, from its peculiar location, or the character of its soil, did not require any work thereon, or that the length thereof may have been so short as not materially to interfere with travel, and it certainly cannot be inferred from the mere neglect or failure to work a part of a road, that it has *wholly and entirely ceased to be a road or highway for any purpose whatever.*"

* 5 Lans., 376. — [REP.

On the last trial, the existence of the marsh and the impracticability, if not impossibility, of traveling over it with teams was clearly shown, and as the marsh adjoined the bridge, its utter uselessness to the inhabitants of the town of Penfield was conclusively established.

That portion of the highway over the marsh being impassable without labor being laid out upon it, and no labor having been laid out upon it for more than six years after it was laid out, it must be deemed to have been discontinued or to have ceased to be a highway.

I cannot agree with the learned judge who tried the case at the Circuit the last time, that the town of Brighton was under any obligation to extend the bridge or to make a road across the marsh in Penfield. If they should build it as a part of the bridge they could recover but one-half of the expense. Thus Brighton would be paying for Penfield one-half of the expenses of the work beyond the bridge, in the latter town.

The statute authorizes the town erecting the bridge to recover one-half of the amount paid therefor. The bridge was built by contract, and Brighton could recover, if any thing, one-half of the contract-price.

Will it be claimed that the contractor was bound by his contract to build a bridge across the creek, to construct trestle work over the marsh or make an embankment over it so that teams could travel over it? It is not necessary to attempt to define what constituted a bridge across the creek in question; it is enough to know that it did not embrace 200 feet of embankment or trestle work beyond the wooden structure and the piers on which it rested.

The motion for a new trial must be denied and judgment of nonsuit entered.

Present — MULLIN, P. J., SMITH and TALCOTT, JJ.

New trial denied and judgment of nonsuit ordered.